**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SAN DIEGO CATTLEMEN'S
COOPERATIVE ASSOCIATION, *et al.*,

       Plaintiffs,

    vs.                            No. CIV 14-0818 RB/RHS

TOM VILSACK, SECRETARY, U.S.
DEPARTMENT OF AGRICULTURE, *et al.*,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

The Forest Service sought to protect the New Mexico meadow jumping mouse's habitat by temporarily fencing-off areas in two National Forests in the state of New Mexico. The Plaintiffs, mostly cattle ranchers, take exception to the fences for several reasons, chief among them that their cattle are blocked from certain water sources. Plaintiffs brought a Motion for a Temporary Restraining Order and Preliminary Injunction to challenge the temporary fence in Lincoln National Forest and the planned fence in Santa Fe National Forest. (Doc. 5.) The Court held a hearing on this matter on October 3, 2014. Having reviewed the parties' submissions and arguments, the Court finds that the motion should be **DENIED**.

I.      **BACKGROUND**

On June 10, 2014, the United States Fish and Wildlife Service listed the New Mexico meadow jumping mouse as endangered under the Endangered Species Act, 16 U.S.C. § 1531 ("ESA"). *See* Endangered Status for the N.M. Meadow Jumping Mouse, 79 Fed. Reg. 33,119 (June 10, 2014) (to be codified at 50 C.F.R. pt 17). According to the Fish and Wildlife Service's findings, the mouse is at an "elevated risk of extinction now" and the situation will not "improve

without significant conservation intervention." *Id.* at 33,134.  As part of this action, the Fish and Wildlife Service proposed, but has not finalized a determination, to designate critical habitat for the mouse, including parts of New Mexico's Santa Fe National Forest and Lincoln National Forest.  *See* Critical Habitat for the N.M. Meadow Jumping Mouse, 79 Fed. Reg. 19,307 (Apr. 14, 2014) (to be codified at 50 C.F.R. pt 17).  Both forests contain grazing allotments where the United States Forest Service permits cattle ranchers to graze their livestock.  (Mot. Prelim. Inj., Doc. 5 at 4, 7.)  The Fish and Wildlife Service determined that excessive livestock grazing in critical riparian areas reduces the mouse's habitat, threatening the viability of the species.  *See* Endangered Status for the N.M. Meadow Jumping Mouse, 79 Fed. Reg. at 33,122.

In response to these findings, the United States Forest Service—the agency in charge of managing the national forests—took action to protect the mouse's habitat.  For the Lower Rio Cebolla area of the Santa Fe National Forest, the Forest Service announced a proposal to build a temporary five-foot pipe fence around certain riparian land.  (Doc. 5 at 4; Pl.'s Ex. DD, Doc. 1-4.)  Cattle currently use the riparian areas under the grazing allotment permit.  (*Id.* at 6-7.)  The Forest Service finalized a closure order for the proposed area and plans to issue it immediately. (Ex. 2, Def.'s Resp., Eaton Decl. ¶ 16, Doc. 13-2.)  For the Mauldin Springs area of the Lincoln National Forest, the Forest Service issued a temporary closure order prohibiting any people or cattle from entering an identified riparian area.  (Pl.'s Ex. EE at 1-2, Doc. 1-4.)  Additionally, the Forest Service built a temporary electric fence around the area.  (*Id.*)  Previously, cattle were permitted to graze in the closed-off areas.  (Doc. 5 at 8.)

Plaintiffs argue that the Forest Service's decisions do not comply with the National Environmental Policy Act ("NEPA").  (Doc. 5 at 23-24.)  The Plaintiffs are either cattle ranchers who hold grazing rights on the affected allotments or organizations who advocate for agricultural

2

and land rights.  (Compl., Doc. 1 at 2.)  Several of the families have ranched in the surrounding areas for multiple generations, some for a hundred years or more.  (Pl. Decls., Pl.'s Exs. B, C, F, G, M-P, R, S, U, V, Docs. 1-1 to 1-3.)  Plaintiffs aver that the decision to close these areas to grazing will negatively impact cattle interests in New Mexico.  (Pl. Decls., Pl.'s Exs. A-CC.)  At the hearing, the Plaintiffs complained that the closures prevented their cattle from accessing prime water sources.

NEPA requires federal agencies to consider the environmental impacts of their actions and disclose those impacts to the public.  *Baltimore Gas & Elec. Co. v. Natural Res. Defense Council*, 462 U.S. 87 (1983).  Under NEPA, federal agencies must prepare environmental impact statements for any "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  In certain narrow instances, an agency is not required to prepare an environmental impact statement or even a more concise environmental assessment.  *See Utah Envtl. Cong. v. Bosworth*, 443 F.3d 732, 736 (10th Cir. 2006).  Specifically, if an action will not have a significant effect on the human environment, it is categorically excluded from further NEPA analysis.  40 C.F.R. § 1508.4.  The Forest Service identified twenty-six categories of actions that constitute categorical exclusions.  36 C.F.R. § 220.6(d)-(e).  Defendants argue that their actions in the Santa Fe and Lincoln Forests, which are all temporary actions, are categorically excluded from further procedural requirements under NEPA.  (Def.'s Resp. at 2-3, 14, Doc. 13.)

Plaintiffs want the Forest Service to consider the economic impacts, community interests, and reasonable alternatives before taking definitive action.  (Doc. 1.)  They argue that the Forest Service's NEPA analysis for the fencing and closure orders was too limited.  (Doc. 1 at 23-24.)  Specifically, Plaintiffs contend that the Forest Service improperly classified the action as being

categorically excluded.  (*Id.*)  On September 26, 2014, the Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction requesting Defendants (1) rescind the closure order and remove the temporary electric fencing in the Lincoln National Forest, and (2) refrain from fencing-off and closing areas of the Santa Fe National Forest, or any other area, without completing the required NEPA analysis.  (Doc. 5.)

At the hearing on October 3, 2014, the Court declined to impose a Temporary Restraining Order.  The Court now analyzes the request for a preliminary injunction.

## II.   LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 20 (2008).  A preliminary injunction is an extraordinary remedy never awarded as of right.  *Id.* at 22.  In order to secure a preliminary injunction, movants must prove that all four equitable factors weigh in their favor.  *Beltronics USA, Inc. v. Midwest Inventory Distrib.*, LLC, 562 F.3d 1067, 1070 (10th Cir. 2009).  Any "right to relief must be clear and unequivocal."  *Id.*  (10th Cir. 2009) (quoting *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).  When a party seeks to alter the status quo, courts should be "especially cautious" before granting a preliminary injunction.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009).

## III.   DISCUSSION

The Plaintiffs bring their claims under the Administrative Procedure Act.  (Doc. 1 at 24-25.)  Under the Administrative Procedure Act, plaintiffs may only challenge final agency actions.  5 U.S.C. § 704.  The parties agree the challenged actions before the Court are the Forest

4

Service's decisions to build temporary fences and issue interim closure orders.  The Forest Service has not yet made any final decisions about permanent closures in either forest.  Thus, the Plaintiffs have to show, among other elements, (1) that they are likely to succeed on their claim regarding the Forest Service's decision to build temporary fences, and (2) that the temporary fences will cause them irreparable injury.

### A.  Likelihood of Success

Since this is an action under the Administrative Procedure Act, the Plaintiffs must ultimately show that the agency's process was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573-74 (10th Cir. 1994).  While administrative agencies are afforded some deference, "an agency's decision will nonetheless be arbitrary and capricious 'if the agency entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'"  *Utah Envtl. Cong.*, 443 F.3d at 739 (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  An agency's decision that an action is categorically excluded from further NEPA analysis warrants judicial deference.  *See Citizens' Comm. to Save Our Canyons v. U.S. Forest Serv.*, 297 F.3d 1012, 1023 (10th Cir. 2002) ("Once an agency establishes categorical exclusions, its decision to classify a proposed action as falling within a particular categorical exclusion will be set aside only if a court determines that the decision was arbitrary and capricious.").

Plaintiffs point to Tenth Circuit precedent suggesting that a party seeking a preliminary injunction is subject to a relaxed burden on the "likelihood of success on the merits" prong.  The

Tenth Circuit has previously said as much.  *See Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980) ("To justify a temporary injunction . . . if the other elements are present . . . , it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation.").  However, the Tenth Circuit also clearly ruled that this relaxed burden does not apply when the movant is seeking a "disfavored" type of preliminary injunction, such as an injunction altering the status quo, a mandatory injunction, or a preliminary injunction that grants all the relief the plaintiff seeks at trial.  *See RoDa Drilling*, 552 F.3d at 1209 (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004)).  Plaintiffs' requested injunction is "disfavored" in so far as it asks the Forest Service to alter the status quo in Lincoln National Forest and affords Plaintiffs the entirety of their requested relief.  (Doc. 1 at 28.)  Accordingly, the Plaintiffs must make "a strong showing" of their likelihood of success.  *O Centro*, 389 F.3d at 975.

Plaintiffs claim that the Forest Service's decisions to take action without a full NEPA analysis and before the final designation of critical habitat were arbitrary and capricious.  (Doc. 5 at 14-19.)  Plaintiffs further attack the accuracy of the science underlying the decisions.  (Doc. 5 at 19-20.)  Undoubtedly, Plaintiffs are correct that the Forest Service will need to undertake a full NEPA analysis, as well as an ESA consultation, before making any permanent decisions about the mouse habitat.  *See* 36 C.F.R. § 220.6(e)(16) ("Proposals for actions that approve projects and activities, or that command anyone to refrain from undertaking projects and activities, or that grant, withhold or modify contracts, permits or other formal legal instruments, are outside the scope of this category and shall be considered separately under Forest Service NEPA

procedures."); 16 U.S.C. § 1536(a)(2) (requiring federal agencies to consult with the Secretary of the Interior to determine the effect of the agencies' actions on endangered species).

Defendants argue, however, that the decision to erect *temporary* fences to prevent further habitat loss while exploring a permanent solution is properly classified as a categorical exclusion. (Def.'s Resp. at 3, 14, Doc. 13.) Initially, the Forest Service relied on exclusion 36 C.F.R. § 220.6(e)(6), which creates an exclusion for "[t]imber stand and/or wildlife habitat improvement activities that do not include the use of herbicides or do not require more than 1 mile of low standard road construction." (Pl.'s Ex. DD at 3, Doc. 1-4.) More recently, the Forest Service invoked exclusion 36 C.F.R. § 220.6(d)(1) in a decision memo, although, by the terms of the Regulations, exclusions under subsection (d) do not require decision memos. (Admin. R. 2 at 1.) The subsection (d)(1) exclusion covers "[p]rohibitions to provide short-term resource protection or to protect public health and safety." 36 C.F.R. § 220.6(d)(1). The Forest Service maintains that it will not make any "irreversible or irretrievable commitment of resources" before undertaking a full review. (Admin. R. 4.)

The Forest Service's actions do not fit comfortably in the administrative exclusions set forth in section (d), nor do they perfectly match the listed exclusions in section (e). But the Defendants have a reasonable argument that temporary measures, lasting a year or less, do not have "a significant effect on the human environment" and thus are categorically excluded from full NEPA review. *See* 40 C.F.R. § 1508.4. Moreover, the Plaintiffs have not made a "strong showing" that the decision was arbitrary and capricious, or unrelated to rational decision-making. Looking at the high standard for preliminary injunctions, and at the heavy burden the Plaintiffs must ultimately bear, the Court feels that this prong tips in the Government's favor.

### B.  Irreparable Harm

To satisfy the irreparable harm requirement, a plaintiff must show "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling*, 552 F.3d at 1210 (quoting *Greater Yellowstone Coal*, 321 F.3d at 1258).  The standard requires that the injury be "both certain and great" not "merely serious or substantial." *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1190 (10th Cir. 2008).  Furthermore, the plaintiff must demonstrate that the harm "is likely to occur before the district court rules on the merits." *RoDa Drilling*, 552 F.3d at 1210.  "If a trial on the merits can be conducted before the injury would occur there is no need for interlocutory relief." *Id.*

Plaintiffs identified the source of their harm as the Forest Service's failure to comply with the NEPA process and fully consider Plaintiffs' stake and their counter-experts' opinions.  At the hearing, Plaintiffs identify three injuries as a result of this harm.

First, Plaintiffs argued that the closures will adversely affect the environment.  Plaintiffs argued that reduced grazing will lead to an overgrowth of vegetation that has the potential to create hydrologic changes downstream.  However, Plaintiffs did not explain how temporary fences could effectuate any serious change, nor did they explain how the hydrologic changes would affect their particularized interests.

Second, Plaintiffs argued that the fencing and closures will interfere with the processing of their cattle.  The closed areas, however, only represent a small fraction of the grazing allotments—just 0.11 percent of the Santa Fe Forest grazing allotment and a mere 0.01 percent of the Lincoln Forest grazing allotment.  (Def.'s Resp. at 2, Doc. 13.)  The cattle will be able to graze in remaining areas of the allotment.  Plaintiffs also raised the important issue of water. (Doc. 5 at 17.)  At the hearing, Plaintiffs conceded that their cattle will be able to access water,

but may not be able to access the most desirable sources of water. Given the currently available resources and the Forest Service's commitment to provide any necessary water, the Plaintiffs' fears about water do not rise to the "certain and great" level.

Third, Plaintiffs argued that this disruption to their cattle processing will ultimately lead to the closure of their cattle ranching businesses. Plaintiffs did not offer any evidence that their businesses were facing any such hardship. It unlikely that this harm would occur before the Court could rule on the merits of this case. Thus, the Plaintiffs cannot use this argument to support their claim for preliminary relief.

Ultimately, the Court is not persuaded by any of the three injuries that the Plaintiffs put forth. The injuries at issue in this action must relate only to the temporary fencing—the final decisions to close habitat are not before the Court. The Court does not see how the temporary fencing will injure the Plaintiffs in any way that cannot be remedied by economic damages. This finding alone is sufficient to defeat the Plaintiffs' motion for a preliminary injunction. *See RoDa Drilling*, 552 F.3d at 1210.

### C. Balance of Equities

Plaintiffs claim that requiring the Forest Service to undertake more NEPA analysis will only benefit the environment and all the parties. (Doc. 5 at 21.) The Defendants counter that the need to protect the endangered mouse trumps all other concerns. The Plaintiffs further argue that taking down the temporary fences will not greatly inconvenience the Forest Service. The Court notes that injunctions requiring a party to take affirmative action—such as tearing down an existing fence or rescinding an order—are never seen as mere inconveniences in the law. *See O Centro*, 389 F.3d at 975 (discussing "disfavored" preliminary injunctions). The Court finds that the balance of equities favors the Government.

## IV.     CONCLUSION

The Forest Service is facing a difficult decision.  It will have to weigh its mandate to protect the mouse's habitat against the needs of local ranchers, recreationists, and other animals. The Plaintiffs greatly value their access to the grazing allotments.  The surrounding communities greatly value the ranchers and their work.  Ultimately, the Forest Service must consider the full panoply of human and environmental impacts.

However, the only issue before the Court at this time is whether the Plaintiffs met their heavy burden to show that Defendants' actions—all temporary in nature—must be stopped and reversed immediately, before holding a trial on the merits.  Such an order would be an extraordinary remedy.  The Court is unconvinced that the temporary fences will cause the Plaintiffs irreparable injury.  Furthermore, the Court finds that the Plaintiffs' chances of succeeding on the merits and the balance of equities tip in the Government's favor.  Accordingly, the Motion for a Preliminary Injunction must be denied.

**THEREFORE**,

**IT IS ORDERED** that Plaintiffs' Motion for a Temporary Restraining Order or a Preliminary Injunction (Doc. 5) is **DENIED**.

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**