# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| SAN DIEGO CATTLEMEN'S COOPERATIVE ASSOCIATION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civ. No. 1:14-cv-00818-RB-RHS |
| TOM VILSACK, SECRETARY, U.S. DEPARTMENT OF AGRICULTURE, *et al.*, | ) ) ) | |
| Federal Defendants. | ) ) | |
| _____ | ) ) | |
| WILDEARTH GUARDIANS, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civ. No. 1:14-cv-00887-KK-RHS |
| UNITED STATES FOREST SERVICE; THOMAS TIDWELL, Chief, U.S. Forest Service; MARIA GARCIA, Forest Supervisor, Santa Fe National Forest, | ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## PLAINTIFF WILDEARTH GUARDIANS' RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO CONSOLIDATE[1]

Plaintiff WildEarth Guardians ("Guardians") opposes the Federal Defendants' Motion to

Consolidate its case, *WildEarth Guardians v. U.S. Forest Service, et al.*, Case 1:14-cv- 00887-

---

[1]    Guardians timely filed its Response in Opposition to Federal Defendants' Motion to Consolidate in Civ. No. 1:14-cv-00887-KK-RHS on December 8, 2014.  *See* Dkt. # 14. Guardians is now filing its Response in the instant case, Civ. No. 1:14-cv-00818-RB-RHS, by direction of the clerk's office.  Although the undersigned changed a few references to reflect its filing in this case, the substance of these responses is identical.

KK-RHS ("*WildEarth Guardians*" case) with *San Diego Cattlemen's Cooperative Association, et al. v. Tom Vilsack, Secretary, U.S. Department of Agriculture, et al.,* Case 1:14-cv-00818-RB-RHS ("*San Diego Cattlemen's*" case), which do not involve common questions of law or fact. Consolidation of the two cases will not promote judicial economy, as they present distinct different procedural postures and separate records for the court's review.  Since the Federal Defendants cannot carry their burden of showing that consolidation is proper or desirable, the Court should deny Federal Defendant's motion to consolidate.

## LEGAL BACKGROUND: ESA § 7

The ESA, 16 U.S.C. §§ 1531 *et seq.*, provides regulatory protection for species listed by the U.S. Fish and Wildlife Service ("FWS") as endangered or threatened.  Section 7(a)(2) of the ESA requires every federal agency (the action agency), in consultation with the FWS, to ensure "that any action authorized, funded, or carried out" by the agency "is not likely to jeopardize the continued existence of" listed species or result in the destruction or adverse modification of such species' critical habitat.  16 U.S.C. § 1536(a)(2).  This "look before you leap" provision requires federal agencies to obtain the expert opinion of FWS before taking or permitting any action that may adversely affect a listed species.  Section 7 has been described as the "heart of the ESA." *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495 (9th Cir. 2011).

If the action agency determines that its action "may affect" a listed species, the agency must engage in "formal consultation" with the FWS.[2]  50 C.F.R. § 402.14(a); *see also* 51 Fed.

---

[2]     An agency need not initiate formal consultation if, as a result of the preparation of a "biological assessment" or as a result of "informal consultation" with FWS, the agency determines, with the written concurrence of FWS, that the proposed action is not likely to adversely affect any listed species or critical habitat.  *See* 50 C.F.R. § 402.14(b).

Reg. 19,926, 19,949 (June 3, 1986) (explaining that "may affect" broadly includes "[a]ny possible effect, whether beneficial, benign, adverse, or of an undetermined character").  At the end of formal consultation, FWS issues a Biological Opinion ("BO") to explain whether the agency action is likely to "jeopardize" the species' existence.  16 U.S.C. § 1536(a)(2).  If the action is likely to cause jeopardy, then the BO must specify reasonable and prudent alternatives ("RPAs") that avoid jeopardy.  *See* 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3).  If the FWS concludes that the action or the RPAs will not cause jeopardy, it will issue an incidental take statement that specifies "the impact, i.e., the amount or extent, of . . . incidental taking" that may occur.  *See* 50 C.F.R. § 402.14(i)(1).

Federal agencies must also reinitiate consultation for any agency action that may affect the mouse, "where discretionary Federal involvement or control over the action has been retained or is authorized by law." 50 C.F.R. § 402.16(d) (requiring reinitiation of consultation when "a new species is listed . . . that may be affected by the identified action.").  Once consultation is initiated or reinitiated, Section 7(d) of the ESA prohibits the agency or any permittee from "mak[ing] any irreversible or irretrievable commitment of resources" toward a project that would "foreclos[e] the formulation or implementation of any reasonable and prudent alternative measures . . . " 16 U.S.C. § 1536(d).

## **FACTUAL BACKGROUND**

FWS listed the New Mexico meadow jumping mouse (*Zapus hudsonius luteus*) as an endangered species, effective on July 10, 2014.  *See* 79 Fed. Reg. 33,119 (June 10, 2014).  Critical habitat for the mouse has been proposed, but has not yet been designated.  *See* 78 Fed. Reg. 37,328 (June 20, 2013).  In its listing decision, FWS stated that "ongoing grazing . . . will

continue to put all of the remaining locations [where the mouse occurs] at considerable risk of extirpation in the near-term (between now and the next 10 years) and increasing over the long term." *Id.* at 33,122.  FWS also directed that, "[i]f a Federal agency implements, authorizes, or funds . . . livestock grazing activities that may affect the New Mexico meadow jumping mouse, then they must enter into consultation with [FWS]."  *Id.* at 33,124.

The Cebolla San Antonio and San Diego grazing allotments in the SFNF contain 2 of only 29 known remaining populations of this rare jumping mouse.  *See* Civ. No. 1:14-cv-00887, Dkt. #1, ¶ 5.  The Forest Service implements and authorizes grazing activities on these allotments through its "Grazing Authorizations," which include issuing grazing permits, authorization of allotment management plans, issuing associated annual operating instructions, and use of its authority to set forth guidelines and conditions on grazing in these allotments (collectively the "Grazing Authorizations").  *Id.*

*WildEarth Guardians* challenges the failure of the Forest Service to comply with its mandatory duty under Section 7 of the ESA to ensure, in consultation with FWS, that its actions authorizing and implementing grazing on the Cebolla San Antonio and San Diego grazing allotments in the Santa Fe National Forest are not likely to jeopardize the continued existence of the New Mexico meadow jumping mouse.  *See id.* ¶ 58*;* 16 U.S.C. § 1536(a)(2).  To redress these violations, Guardians seeks to compel the Forest Service to comply with the Section 7 of the ESA, including (1) the agency's procedural duty to initiate/reinitiate and to complete consultation with the FWS as to the effects of its Grazing Authorizations on the New Mexico meadow jumping mouse; (2) the agency's substantive duty to ensure that its Grazing Authorizations do not jeopardize the New Mexico meadow jumping mouse; and (3) the agency's

duty to avoid any irreversible and irretrievable commitments of resources until consultation is complete.[3]  *See* Civ. No. 1:14-cv-00887, Dkt. #1, p. 17-20.

Conversely, *San Diego Cattlemen's* challenges the Forest Service's compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §4321 *et seq.*, with respect to its proposal to build a fence around certain riparian land in the San Diego Allotment of the Santa Fe National Forest and a closure order for this area (representing just 0.11 percent of that allotment).[4]  *See* Civ. No. 1:14-cv-00818-RB-RHS, Dkt. # 18 at 2; Dkt. # 13 at 2.  Plaintiffs' claims in *San Diego Cattlemen's* were brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §706, which requires a challenge to "final agency action."[5]  As explained in Federal Defendants' response in opposition to the plaintiffs' motion for a preliminary injunction, the Forest Service has not made a decision on its proposal to permanently close riparian areas in the San Diego Allotment.  Dkt. # 13 at 2.  The only final agency action that is potentially ripe for review involves an interim closure order and the installation of a temporary fence.  *See id.*

Because the Forest Service determined that these temporary closure actions fell within the agency's categorical exclusions, the only legal issues in *San Diego Cattlemen's* are whether these actions are categorically excluded from further procedural requirements under NEPA and/or whether the Forest Service's interpretation of its categorical exclusion was arbitrary and

---

[3]     The ESA's limitation on commitment of resources is triggered upon initiation of consultation.  *See* 16 U.S.C. § 1536(d).

[4]     *San Diego Cattlemen's* also challenges similar actions on the Lincoln National Forest.

[5]     *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (holding that to be justiciable under the APA, an agency action must be "final" in that it marks the "'consummation' of the agency's decision-making process," and is an action "from which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'").

capricious.  *See* Order Denying Preliminary Injunction, Dkt. # 18 at 3, 5, 6.  The legal and factual

issues presented in the *San Diego Cattlemen's* NEPA case are therefore wholly distinct from the

*WildEarth Guardians* ESA case.

## LEGAL STANDARD

"If actions before a court involve a common question of law or fact, the court may"

consolidate the actions, join for hearing any or all matters at issue in the actions, or enter any

other orders to avoid unnecessary costs or delays.  Fed. R. Civ. P. 42(a).  "The party moving for

consolidation bears the burden of proving that consolidation is desirable."  *Servants of Paraclete,*

*Inc. v. Great Am. Ins. Co.,* 866 F. Supp. 1560, 1572 (D.N.M. 1994) (citation omitted).   In its

consideration of a motion to consolidate under Rule 42(a), the court must first determine, as a

threshold matter, if there is any common issue of fact or law in the two cases.  *See id.*  If there is

a common issue, "the Court should then weigh the interests of judicial convenience in

consolidating the cases against the delay, confusion, and prejudice consolidation might cause."

*Id.*  The decision whether to grant a motion to consolidate is within the sound discretion of the

district court.  *See Shump v. Balka*, 574 F.2d 1341, 1344 (10th Cir. 1978).

## ARGUMENT

The factual and legal questions at issue in the *San Diego Cattlemen's* NEPA case are

very different from the ESA issues presented in *WildEarth Guardians*.  The only commonality

between the two distinct cases is that they both involve the same animal.  They do not involve

the same agency action, the same factual record, or even the same law.  The pending motion to

consolidate is premised on a superficial discussion of the similarities between the two cases, but

the Federal Defendants fail to demonstrate that there is a true common question of fact or law, as

required by FED. R. CIV. P. 42(a).  Furthermore, any benefits of consolidation would be minimal

and would be outweighed by complicating the straightforward and discrete ESA issues presented

in *WildEarth Guardians*.  For the foregoing reasons, the Court should deny Federal Defendants'

Motion to Consolidate these cases.

## A.     No Common Issues of Law or Fact Exist

Federal Defendants fail to identify a single question of law or true question of fact in

common between these two cases, which present very different legal issues.  "Although neither

Rule 42 nor case law defines 'common question of law or fact,' the plain meaning of this phrase

indicates that a common question is one that must be answered identically in each case in which

it is presented."  *See Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 390, 394 (E.D. Wis. 2008).

"The existence of common questions of law and fact is a prerequisite for any consolidation."

*Magnavox Co. v. APF Electronics, Inc.*, 496 F. Supp. 29, 32 (N.D. Ill. 1980).  Actions involving

the same parties do not warrant consolidation, where common questions of law or fact do not

exist.  *See Olivier v. Humble Oil & Ref. Co.,* 225 F. Supp. 536 (E.D. La. 1963).

Federal Defendants argue that these cases should be consolidated because they "deal[]

with the same livestock grazing allotment" – the San Diego allotment in the Lower Rio Cebolla

area of the Santa Fe National Forest –  "and the same Forest Service actions for managing

livestock grazing in concert with protecting the endangered New Mexico meadow jumping

mouse."  Civ. No. 1:14-cv-00818-RB-RHS, Dkt. # 21; Civ. No. Case 1:14-cv-00887-KK-RHS;

Dkt. # 12;  "Fed. Defs. Mot." at 2.  This is inaccurate.  *WildEarth Guardians* is a "failure to

consult" case brought pursuant to the citizen suit provision of the ESA, 16 U.S.C. § 1540(g).

*WildEarth Guardians* challenges the Forest Service's <u>inaction</u> with respect to its mandatory duty

to engage in consultation with FWS regarding the effects of certain agency actions authorizing and implementing grazing in the Cebolla San Antonio and San Diego allotments on the New Mexico meadow jumping mouse.  *See* 16 U.S.C. § 1536(a)(2).

Conversely, *San Diego Cattlemen's* challenges the Forest Service's <u>actions</u> – its decision to classify a proposal for a temporary fence and closure order on the San Diego allotment as categorically excluded from NEPA.  Although there are numerous "background" facts in common with both cases – such as the listing of the New Mexico meadow jumping mouse and the threat of ongoing grazing to its continued existence – these cases do not present a "common <u>question</u> of law or fact" for the Court to decide.  *See* FED. R. CIV. P. 42(a) (emphasis added).

Indeed, the questions of fact and law at issue in *WildEarth Guardians* is very limited. For the Forest Service's actions authorizing and implementing grazing in the Cebolla San Antonio and San Diego allotments, the questions for the Court to decide are: 1) whether these are affirmative and/or ongoing agency "actions" and 2) whether these actions are likely to adversely affect the New Mexico meadow jumping mouse.[6]  *See* 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.02.  If these questions are answered in the affirmative, the Forest Service must engage in formal consultation with FWS.  *See id.*  For those actions authorizing and implementing grazing in the Cebolla San Antonio and San Diego allotments, for which the Forest Service has previously engaged in formal consultation with FWS, the only questions are: 1) whether discretionary Federal involvement or control over the action has been retained or is authorized by

---

[6]     If the mouse "may be present" in the action area, the Forest Service must prepare a Biological Assessment to determine whether the species is likely to be adversely affected by the action, which is used to determine whether formal consultation is necessary.  *See* 16 U.S.C. § 1536(c)(1); 50 C.F.R. § 402.12(a)

law and 2) whether the jumping mouse may be affected by the action.  *See* 50 C.F.R. §

402.16(d).  If these questions are answered in the affirmative, the Forest Service must reinitiate

consultation with FWS.  *See id.*  There are no overlapping questions of fact or law presented in

*San Diego Cattlemen's*, which concerns whether the Forest Service's proposals to erect a

temporary fence and issue a temporary closure order were properly categorically excluded from

full NEPA review.

Federal Defendants also argue that "Plaintiffs in the *San Diego Cattlemen's* Case

expressly challenge the notion, championed in WildEarth Guardians' [Notice of Intent to Sue

letter], that occupied habitat for the jumping mouse warrants any protection under the ESA in the

absence of it formally being designated 'critical habitat' by FWS."  Fed. Def.'s Mot. at 6.

(emphasis added).  Again, this is inaccurate.  Guardians' Complaint alleges ESA violations based

on the Forest Service's failure to initiate and/or reinitiate consultation with the FWS as to the

effects of its Grazing Authorizations on the ***species***, which is present on Cebolla San Antonio

and San Diego allotments, not its habitat.  Guardians' Complaint includes no allegations that the

Forest Service must consult regarding the effects of its actions on the mouse's critical habitat.[7]

Guardians also does not seek judicial review of the Forest Service's management of

livestock grazing on certain allotments, in response to the listing of the New Mexico meadow

jumping mouse, as Federal Defendants contend.  *See* Fed. Def.'s Mot. at 13.  This implies review

of an agency action.  Questions such as whether the Forest Service is doing enough to protect the

mouse are not before the court in *WildEarth Guardians*.  Through formal consultation, FWS will

---

[7]     Although the Forest Service is required to consult with FWS to ensure that "that any
action authorized, funded, or carried out" by the agency is not likely to result in the destruction
or adverse modification of the mouse's "critical habitat," see 16 U.S.C. § 1536(a)(2), FWS has
not yet legally designated any critical habitat for the mouse.

address this question in its formulation of a Biological Opinion, which must specify "reasonable and prudent alternatives" to the Forest Service's actions that avoid jeopardy to the jumping mouse. *See* 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3).  In fact, the purpose of Section 7's consultation procedures is to prevent substantive violations of the ESA. *See Washington Toxics Coal. v. Envtl. Prot. Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005).  If an agency fails to comply with Section 7's procedural requirements, "there can be no assurance that a violation of the ESA's substantive provisions will not result.  The latter, of course, is impermissible." *Thomas v. Peterson*, 753 F.2d 754, 764 (9th Cir. 1985).

Because Federal Defendants fail to meet their burden to demonstrate that common questions of fact or law exist, the Motion to Consolidate must be denied.  *See* FED. R. CIV. P. 42(a). *See also Servants of the Paraclete v. Great American Insurance Co.,* 866 F. Supp. 1560, 1573 (D.N.M. 1994) (declining to consolidate where individual questions of law and fact predominate over common ones); Leviton Mfg. Co. v. Nicor, Inc., No. CIV 04-0424 JB/LFG, 2007 WL 505784, at *3 (D.N.M. Jan. 8, 2007) (declining to consolidate where the principal legal and factual issues in the two cases differed); *Anderson Living Trust v. WPX Energy Prod., LLC*, 297 F.R.D. 622, 623 (D.N.M. 2014) (declining to consolidate where defendants failed to meet "their burden to show that consolidation would produce substantial tangible efficiencies warranting the Court to override the Plaintiffs' autonomy in mastering their own complaints.").

**B.    Consolidation Would Not Produce Judicial Efficiencies**

Common questions of fact or law are required for consolidation pursuant to FED. R. CIV. P. 42(a).  However, should the Court find that such a common question exists, the Court should exercise its discretion and decline to consolidate the cases.  First, there is little risk of

irreconcilable injunctions absent consolidation.  Second, the scope of the Court's review will differ substantially in these cases, so consolidation will not save judicial resources.  Because Federal Defendants have "not met their burden to show that consolidation would produce substantial tangible efficiencies," consolidation should be denied.  *See Anderson Living Trust v. WPX Energy Prod., LLC*, 297 F.R.D. 622, 631 (D.N.M. 2014).

       **1.**    **The Risk of Incompatible Injunctions is Insignificant**

Plaintiff in *WildEarth Guardians* seeks to compel the Forest Service to consult with FWS on the effects of certain Grazing Authorizations on the New Mexico meadow jumping mouse. Guardians also seeks an order "[e]njoin[ing] the Forest Service from any actions authorizing and implementing grazing in the Cebolla San Antonio and San Diego allotments" until consultation is complete.  See Compl., Civ. No. 1:14-cv-00887-KK-RHS, Dkt. #1 at 20.  Plaintiffs in *San Diego Cattlemen's* request that the Court enter an order "[p]reliminarily and permanently enjoining the Forest Service from erecting fencing or other structures or taking any other actions to prevent legal and lawful grazing in areas that the Forest Service believe constitute 'occupied habitat' for the New Mexico meadow jumping mouse," including on the San Diego Allotment on the Santa Fe National Forest.  *See* Compl., Civ. No. 1:14-cv-00818-RB-RHS, Dkt. #1 at 28. Although these requests seem in conflict at first blush, the risk of incompatible injunctions against the Forest Service concerning the San Diego allotment is very slight.

The actions arguably subject to injunctive relief in *San Diego Cattlemen's* are decisions regarding a temporary fencing proposal and closure order.  In denying the *San Diego Cattlemen's* plaintiffs' motion for a temporary restraining order, the Court found that "Defendants have a reasonable argument that [these] temporary measures, lasting a year or less,

do not have 'a significant effect on the human environment' and thus are categorically excluded from full NEPA review."  Case No. 1:14-cv-00818-RB-RHS, Dkt. # 18 at 7 (citing 40 C.F.R. § 1508.4).  The Court noted that "Plaintiffs are correct that the Forest Service will need to undertake a full NEPA analysis, as well as an ESA consultation, before making any permanent decisions about the mouse habitat."  *Id.* at 6.  However, any future proposed actions by FWS with respect to the mouse – such as implementing "reasonable and prudent alternatives" to avoid jeopardy – are unknown.  Defendants in *San Diego Cattlemen's* cannot maintain a NEPA or APA claim challenging future "actions to prevent legal and lawful grazing," because there is no final agency action to challenge.  *See Bennett v. Spear*, 520 U.S. at 177-78.  Any claims regarding the Forest Service's future decisions about grazing on the San Diego allotment are not ripe for review.  Therefore, there can be no risk of inconsistent injunctions based on the current claims as set forth in both cases.

### 2.  Consolidation Will Not Promote Judicial Economy, as the Scope of Review and Procedural Posture for the Cases is Different

The Court should also decline to consolidate *WildEarth Guardians* and *San Diego Cattlemen's* because of a very significant difference between the cases: *San Diego Cattlemen's* is a record-review case governed by the provisions of the APA and subject to review as an appeal under the procedures set forth in *Olenhouse v. Commodity Credit Corp.,* 42 F.3d 1560 (10th Cir. 1994); whereas *WildEarth Guardians* is a "failure to act" case brought pursuant the ESA, which provides jurisdiction and the available remedy for Guardians' claims.  *See* 16 U.S.C. § 1540(g)(1)(A) (authorizing citizen suits "to enjoin any person, including" any governmental agency, "who is alleged to be in violation of any provision of" the ESA or its implementing regulations); *id.* § 1540(g) (authorizing courts "to enforce any such provision or regulation").

Because *WildEarth Guardians* is not subject to *Olenhouse* and will not be treated as an appeal, the scope of the Court's review will be different.  Therefore, consolidation will not be beneficial, as the cases involve different procedural postures and will be based on different records.  *See, e.g., Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 390, 393-94 (E.D. Wis. 2008) (declining to consolidate, stating: "Because each action will be based on a different administrative record, challenges to different actions will likely involve different questions of law and fact.  Only if the administrative records contain identical facts or present the same legal question will different actions share a common question.").

### a.     ESA Citizen Suit Claims Based on an Agency's Failure to Act are Not Based on an Administrative Record Created by the Agency

The Federal Defendants wrongly assert that the Court's review in both cases will be based on the same Administrative Record for how the Forest Service is managing livestock grazing on the San Diego Allotment.  *See* Fed. Defs.' Mot. at 13.  However, *WildEarth Guardians* concerns the agency's inaction – its failure to engage in consultation with FWS regarding the effects of Grazing Authorizations for the Cebolla San Antonio and San Diego allotments on the New Mexico meadow jumping mouse.  *San Diego Cattlemen's* is a NEPA and APA challenging the agency's actions – its decisions to erect fencing and issue temporary closures, without conducting a full NEPA review.

Furthermore, claims brought under the ESA's citizen suit provision, such as those set forth in *WildEarth Guardians*, are not subject to the APA's **scope**[8] of review and are not limited

---

[8]     "The scope of judicial review refers merely to the evidence the reviewing court will examine in reviewing an agency decision." *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127, 1136 (10th Cir. 1991).  However, the ESA borrows the APA's "standard of review." *Biodiversity Legal Foundation v. Babbitt*, 146 F.3d 1249, 1252 (10th Cir. 1998) [con't]

to an administrative record compiled by the agency.  Although the Tenth Circuit has not decided

this issue, the Ninth Circuit has twice held that cases seeking to enforce the ESA consultation

requirement are not limited by the APA's scope of review.  In *Western Watersheds Project v.*

*Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011), plaintiffs challenged an agency's failure to consult

with FWS on revised livestock grazing regulations.  The court held that because plaintiffs'

"failure to consult" claim was available under the ESA citizen suit provision, the court "looks to

the ESA and not the APA" and therefore "may consider evidence outside of the administrative

record for . . . purposes of reviewing Plaintiffs' ESA claim."  *Id.* at 496, 497-98.  In *Washington*

*Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005), the plaintiffs brought suit against the

Environmental Protection Agency, alleging the agency failed to consult before approving the

registration of 54 pesticide ingredients.  *Id.* at 1028.  The Court held that because the ESA

"creates an express, adequate remedy" and "independently authorizes a private right of action,

the APA does not govern the plaintiffs' claims."  *Id.* at 1034.

    Several district courts have also ruled that claims brought under the ESA citizen suit

provision are not subject to the APA's limitations on the scope of review and that courts may

consider evidence outside an administrative record.  *See, e.g., Or. Natural Desert Ass'n. v.*

*Kimbell*, 593 F.Supp.2d 1217, 1220 (D. Or. 2009); *Strahan v. Roughead*, 2010 WL 4827880, *6

(D. Mass. Nov 22, 2010); *Native Ecosystems Council v. Krueger*, 946 F. Supp. 2d 1060, 1078

(D. Mont. 2013) ("[C]ourts have not similarly borrowed the APA's scope of review that

prohibits consideration of material outside the administrative record[.]").

---

(determining whether FWS unlawfully withheld agency action); *Tribal Village of Akutan v.*
*Hodel*, 869 F.2d 1185 (9th Cir. 1989) ("Because ESA contains no internal standard of review,
our review is governed by the [APA]").

Furthermore, a "record" cannot exist when an agency has failed to perform a mandatory duty because a "record" is, by definition, composed of the documents in front of the agency at the time of a decision.  *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971) (finding administrative record is body of evidence agency compiled and considered before making challenged decision); *Double J. Land & Cattle v. U.S. Dep't of the Interior*, 91 F.3d 1378, 1383 (10th Cir. 1996) ("When an agency makes a decision, the grounds upon which the agency acted must be clearly disclosed in, and sustained by, the record.").  When an agency does not take the required action, there can be no administrative record relating to that agency inaction. The Forest Service may want to fabricate a record to dictate what can and cannot be reviewed by the Court, but a record necessarily means the agency took some action.

Similarly, courts have found that failure to act claims challenging agency inaction under § 706(1) of the APA are not limited to an administrative record compiled by the agency.[9]  *See, e.g., Sierra Club v. Hodel*, 848 F.2d 1068, 1092 (10th Cir. 1988) (court reviewed expert trial testimony and studies in deciding whether agency had to comply with NEPA); *San Francisco Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) ("As this case concerns agency inaction, there can be no final agency action that closes the administrative record or explains the agency's actions."); *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000) ("review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record"); *Environmental Defense Fund v.*

---

[9]     Under the APA section 706(1), courts "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "This [APA provision] permits the courts to review agency inaction, when an agency fails to act in accordance with its statutory duties."  *Defenders of Wildlife v. Tuggle*, 607 F.Supp.2d 1095, 1099 (D. Ariz. 2009).

*Reilly*, 909 F.2d 1497, 1503 (D.C. Cir. 1990) ("in a judicial review of denial of a citizen's petition or failure to act, there would be no record upon which the review could be based, and therefore a de novo procedure is essential to provide the opportunity to develop such a record").

> **b.   These Cases Present Different Procedural Postures, as *Olenhouse* Does Not Apply to Guardians' ESA claims**

In *Olenhouse*, the Tenth Circuit held that "[r]eviews of agency action in the district courts must be processed as appeals" using appellate style briefing rather than summary judgment motions.  42 F.3d at 1580.  The court also found that in most cases review should be based on the administrative record and not extra-record documents.  *Id.*  This is because, unlike typical civil disputes resolved on the basis of facts developed at the district court level, administrative appeals are generally reviews of decisions based on facts already determined and applied in an administrative process.  These administrative procedure ("AP") cases are therefore treated differently than regular civil cases.  For example, in Colorado, these cases are assigned directly to an AP docket and are reviewed by an AP judge.  However, as explained in a recent article for Colorado's bar association, if a case has been "improperly or unnecessarily assigned to the AP docket, it will be designated for reassignment directly to a merits judge.  For example, administrative appeals that do not involve a record review of an agency decision – such as a request for a mandatory injunction or an appeal **based on an agency's failure to act** – often are re-assigned directly to a merits judge." *Untangling Federal Administrative Appeals Practice in the District of Colorado*, *Colorado Lawyer*, March 2013, p. 32 (emphasis added).[10]

---

[10]      This article is available on the website of Hon. Judge John L. Kane, an author of *Olenhouse*.  *See* http://www.cod.uscourts.gov/Portals/0/Documents/Judges/JLK/jlk_CH-KR-AP-docket-article-03-2013-Colo-Lawyer.pdf.

As explained above, *WildEarth Guardians* seeks review of the Forest Service's <u>inaction</u> under the ESA, so the <u>scope</u> of judicial review of agency action under the APA does not apply. Because there is no final administrative decision to review, the principles of appellate review pursuant to *Olenhouse* are not applicable.  *See Olenhouse*, 42 F.3d at 1574 (purpose of administrative record review is to allow the Court to take a "thorough, probing, in-depth review" of the challenged agency action) (citing *Citizens to Preserve Overton Park*, 401 U.S. at 415).

Indeed, Guardians' ESA claims may be evaluated with any admissible evidence.  *See Native Fish Soc. v. Nat'l Marine Fisheries Servs.,* 992 F. Supp. 2d 1095, 1106 (D. Or. 2014) ("Plaintiffs' § 7(a)(2) claim, . . . that NMFS should have reinitiated formal consultation is evaluated with any admissible evidence and is not limited to the administrative record."). Guardians should be permitted discovery and the opportunity to present expert evidence.  *See Desert Association v. Kimbell*, 593 F.Supp.2d 1217 (D. Or. 2009) (permitting plaintiff to introduce evidence, including expert reports, to prove alleged violations of Sections 7).  Thus, the procedure for the Court's review of *WildEarth Guardians* is distinctly different from that involved in *San Diego Cattlemen's*, and consolidation will serve only to complicate and confuse matters.

## CONCLUSION

Despite some overlap in subject matter in *WildEarth Guardians* and *San Diego Cattlemen's*, there are no common questions of law or fact allowing consolidation pursuant to Fed. R. Civ. P. 42(a).  Further, the Federal Defendants have not carried their burden of showing that the consolidation of these two cases will lead to any judicial efficiencies, as the basis of the Court's review and the review process itself will be different in each case.  For these reasons,

WildEarth Guardians respectfully ask the Court to deny the Federal Defendants' motion to consolidation.

    Respectfully submitted on the 9th day of November 2014,

/s/ Ashley D. Wilmes
Ashley D. Wilmes
WildEarth Guardians
680 W. Hickory St.
Louisville, CO 80027
Tel: (859) 312-4162
awilmes@wildearthguardians.org
*Attorney for Plaintiff*
*WildEarth Guardians*

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Response was served on all counsel of record through the Court's ECF system on this 9th day of November 2014.

s/ Ashley Wilmes
Ashley Wilmes
