IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAN DIEGO CATTLEMEN'S
COOPERATIVE ASSOCIATION, et al.,

      Plaintiffs,

v.                                                    No. 1:14-cv-00818 RB/WPL

TOM VILSACK, SECRETARY, U.S.
DEPARTMENT OF AGRICULTURE, et al.,

      Defendants,

---

WILDEARTH GUARDIANS,

      Plaintiff,

v.                                                    No. 1:14-cv-00887 RB/WPL

UNITED STATES FOREST SERVICE,
et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff WildEarth Guardians' Motion for an Order Requiring Federal Defendants to File an Answer to Plaintiff's Complaint. (Doc. 17). The Court's jurisdiction arises under 28 U.S.C. § 1331. In these consolidated cases, Plaintiffs seek judicial review of the United States Forest Service's management of livestock grazing allotments in response to the listing of the New Mexico meadow jumping mouse under the Endangered Species Act and the Administrative Procedure Act. Having reviewed the parties' submissions and the relevant law, and being otherwise fully advised, the Court denies the motion.

I.	**Background**

On June 10, 2014, the United States Fish and Wildlife Service listed the New Mexico meadow jumping mouse as endangered under the Endangered Species Act, 16 U.S.C. § 1531. *See* Endangered Status for the N.M. Meadow Jumping Mouse, 79 Fed. Reg. 33,119 (June 10, 2014) (to be codified at 50 C.F.R. pt 17). The New Mexico meadow jumping mouse is a rare subspecies of mouse found in parts of New Mexico, southern Colorado, and eastern Arizona where there is herbaceous riparian vegetation with moist-saturated soils. *Id.* The New Mexico meadow jumping mouse is pictured here:



*See* http://www.fs.usda.gov/detail/r3/home/?cid=STELPRD3809040 (Photo credit Jennifer Frey)

According to the Fish and Wildlife Service's findings, the listing was attributed to "significant reduction in occupied localities likely due to cumulative habitat loss and fragmentation across the range." *Id.* Furthermore, the New Mexico meadow jumping mouse is at an "elevated risk of extinction now" and the situation will not "improve without significant conservation intervention." *Id*. at 33,134. As part of the listing decision, the Fish and Wildlife Service proposed to designate critical habitat for the mouse, including parts of the Santa Fe National Forest and Lincoln National Forest. *See* Critical Habitat for the N.M. Meadow Jumping Mouse, 79 Fed. Reg. 19,307 (Apr. 14, 2014) (to be codified at 50 C.F.R. pt 17). The National Forests contain grazing allotments where the United States Forest Service permits cattle ranchers to graze their livestock. (14cv00818, Doc. 5.)

In the listing decision, the Fish and Wildlife Service found that livestock grazing on stream banks contributes to habitat degradation by removing the vegetation, eroding the stream banks, and lowering water tables. *See* Endangered Status for the N.M. Meadow Jumping Mouse, 79 Fed. Reg. at 33,122, 33,124. Excessive livestock grazing in critical riparian areas reduces the New Mexico meadow jumping mouse habitat, threatening the viability of the species. *See id.*, 79 Fed. Reg. at 33,122. As a result, the listing decision requires any federal agency that "implements, authorizes, or funds water use or livestock grazing activities that may affect the New Mexico meadow jumping mouse" to consult with the Fish and Wildlife Service to avoid jeopardizing the continued existence of the New Mexico meadow jumping mouse. *Id.* at 33,124.

In response to the listing decision, the United States Forest Service, the agency charged with managing the national forests, took action to protect the habitat of the New Mexico meadow jumping mouse. (Doc. 18). On July 10, 2014, the United States Forest Service requested comments on a proposed Lower Rio Cebolla Occupied Habitat Improvement Project in the Santa

Fe National Forest. (Doc 1-4).

On July 11, 2014, WildEarth Guardians sent the United States Forest Service a Notice of Intent to Sue, alleging that the United States Forest Service was in violation of the Endangered Species Act by failing to initiate consultation with the Fish and Wildlife Service on the adverse effects of livestock grazing on the New Mexico meadow jumping mouse. (Doc. 21-1). In its Notice of Intent to Sue, WildEarth Guardians addressed the United States Forest Service's management of livestock grazing allotments containing occupied habitat for the New Mexico meadow jumping mouse. (*Id.*) WildEarth Guardians asserted that "grazing in these allotments has caused past and present adverse effects to the New Mexico meadow jumping mouse, is causing an imminent threat of continuing adverse effects to the species, and is putting the meadow jumping mouse at 'considerable risk of extirpation.' " (*Id.*)

On July 18, 2014, the United States Forest Service sent a letter to the United States Fish and Wildlife Service requesting voluntary re-initiation of consultation on its Forest Plan, pursuant to Section 7(a)(2) of the Endangered Species Act. (Doc. 1.) The United States Forest Service stated that it was reviewing other activities, including livestock grazing, but it did not request initiation or re-initiation of consultation on its actions relating to implementation and authorization of grazing on any allotments in the Santa Fe National Forest. (*Id.*).

On October 1, 2014, WildEarth Guardians filed suit and invoked this Court's jurisdiction under 16 U.S.C. §1540(g)(1) (the citizen-suit provision of the Endangered Species Act), 5 U.S.C. §§ 701-706 (the Administrative Procedure Act), and 28 U.S.C. § 1331 (federal question jurisdiction). (Complaint, Doc. 1). In its Complaint for Declaratory and Injunctive Relief, WildEarth Guardians alleges that the United States Forest Service violated the Endangered Species Act by failing to consult with the United States Fish and Wildlife Service to ensure that

its actions are not likely to jeopardize the continued existence of the New Mexico meadow jumping mouse. (*Id.*) WildEarth Guardians alleges that two of the twenty-nine known populations of New Mexico meadow jumping mouse occur within the Cebolla San Antonio and San Diego grazing allotments in the Santa Fe National Forest. (*Id.*) According to WildEarth Guardians, the United States Forest Service's actions authorizing and implementing grazing in the Cebolla San Antonio and San Diego allotments constitute affirmative and/or ongoing agency "action" triggering its mandatory procedural and substantive duties under Section 7(a)(2) of the Endangered Species Act. (*Id.*)

Additionally, WildEarth Guardians alleges in its Complaint for Declaratory and Injunctive Relief, that the United States Forest Service's actions authorizing and implementing grazing in the Cebolla San Antonio and San Diego allotments before the completion of Section 7(a)(2) consultation constitute an irreversible or irretrievable commitment of resources, within the meaning of Section 7(d) of the Endangered Species Act. (Doc. 1.) In that grazing destroys the specialized habitat necessary for the New Mexico meadow jumping mouse's survival and recovery, the actions of the United States Forest Service may result in the extirpation of additional populations, long-term damage to suitable habitat, destruction of potential alternative habitat. (*Id.*) WildEarth Guardians asserts that the United States Forest Service must suspend grazing activities within the Cebolla San Antonio and the San Diego allotments until it has completed consultation on the effects of grazing on the New Mexico meadow jumping mouse with the United States Fish and Wildlife Service. (*Id.*)

WildEarth Guardians raises the following causes of action in its Complaint for Declaratory and Injunctive Relief: (1) the United States Forest Service violated its substantive duties under 16 U.S.C. § 1536(a)(2) by failing to ensure that its actions authorizing and

implementing grazing in the Cebolla San Antonio and San Diego allotments do not jeopardize the survival or recovery of the New Mexico meadow jumping mouse; (2) the United States Forest Service violated its procedural duties under 16 U.S.C. § 1536(a)(2) by failing to initiate and conduct a Section 7(a)(2) consultation with the United States Fish and Wildlife Service as to the effect of its actions authorizing and implementing grazing in the Cebolla San Antonio and San Diego allotments on the New Mexico meadow jumping mouse; and (3) the United States Forest Service action in authorizing and implementing grazing in the Cebolla San Antonio and San Diego allotments before the completion of Section 7(a)(2) consultation constituted an irreversible or irretrievable commitment of resources, in violation of 16 U.S.C. § 1536(d). (Doc. 1.) In addition to declaratory and injunctive relief, WildEarth Guardians requests an award of attorney fees and costs. (*Id*.) On December 8, 2014, Defendants filed a Response to the Complaint denying all violations of federal law and stating that the Complaint for Declaratory and Injunctive Relief should be treated as a Petition for Review of Agency Action. (Doc. 13.)

In its Motion for an Order Requiring Federal Defendants to File an Answer to Plaintiff's Complaint, WildEarth Guardians contends that this matter is not a challenge to federal agency actions under the judicial review provisions of the Administrative Procedure Act because it brings failure-to-act claims under the citizen-suit provision of the Endangered Species Act. Defendants respond the judicial review provisions of the Administrative Procedure Act apply to this matter.

**II.     Discussion**

WildEarth Guardians asserts jurisdiction pursuant to 16 U.S.C. § 1540(g)(1) (Endangered Species Act citizen suit provision); 5 U.S.C. § 701-706 (Administrative Procedure Act); and 28 U.S.C. § 1331 (actions arising under the laws of the United States). The Endangered Species

Act's citizen-suit provision states in pertinent part that "any person may commence a civil suit on his own behalf - (A) to enjoin any person, including the United States and any . . . agency . . ., who is alleged to be in violation of any provision of [the Endangered Species Act]; . . .(C) against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1). The Administrative Procedure Act states that courts may review both "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704.

The Tenth Circuit has held that the Administrative Procedure Act governs judicial review of agency action challenged through the citizen-suit provision of the Endangered Species Act. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1106 n.3 (10th Cir. 2010) ("The APA governs judicial review of agency action challenged through the ESA citizen-suit provision."); *Coalition for Sustainable Res. v. U.S. Forest Serv.*, 259 F.3d 1244, 1249 (10th Cir. 2001) ("Judicial review of agency action through the [ESA] citizen-suit provision is governed by the Administrative Procedure Act."); *Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249, 1252 (10th Cir. 1998) ("In examining whether the [United States Forest] Service's actions violate the ESA, we rely on the standards of review provided in the APA."). The Tenth Circuit has stated that this rule includes actions "to challenge the agency's failure to undertake consultation in the first instance." *See Rio Grande Silvery Minnow*, 601 F.3d at 1106 n.3.

In this case, WildEarth Guardians requests that the Court direct the United States Forest Service to consult with the United States Fish and Wildlife Service pursuant to § 7(a)(2) of the Endangered Species Act. Additionally, WildEarth Guardians requests that the Court require the United States Forest Service to suspend grazing activities within the Cebolla San Antonio and

the San Diego allotments until it has completed such consultation. Simply put, WildEarth Guardians seeks relief under 16 U.S.C. § 1540(g)(1)(A) and 5 U.S.C. § 704. Therefore, under binding Tenth Circuit authority, judicial review of this matter is governed by the Administrative Procedures Act. *See Rio Grande Silvery Minnow*, 601 F.3d at1106 n.3; *Coalition for Sustainable Res., Inc.*, 259 F.3d at 1249-50; *Biodiversity Legal Found.*, 146 F.3d at 1252. WildEarth Guardians' contention that the APA is inapplicable because it challenges the agency's failure to act is legally unsupported because "[t]he judicial review provisions of the APA do not distinguish between a claim that an agency unlawfully failed to act and a claim based on action taken. In both cases, the court's review of the defendant agencies' actions is generally confined to the administrative record." *Sierra Club v. U.S. Dep't of Energy*, 26 F. Supp. 2d 1268, 1272 (D. Colo. 1998).

It bears underscoring that the Tenth Circuit has emphasized that a district court reviewing an agency action under the Administrative Procedure Act acts as an appellate court, rather than as a trial court. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994). "Reviews of agency action in the district court must be processed *as appeals*. In such circumstances the district court should govern itself by referring to the Federal Rules of Appellate Procedure." *Id.* (emphasis in original). *See also WildEarth Guardians v. U.S. Forest Serv.*, 668 F. Supp. 2d 1314, 1323 (D.N.M. 2009) ("Pursuant to *Olenhouse* . . ., claims under the APA are treated as appeals and governed by reference to the Federal Rules of Appellate Procedure.").

The Tenth Circuit has reaffirmed that the procedure mandated by *Olenhouse* is the correct procedure for claims challenging compliance with the ESA. *See, e.g.*, *Forest Guardians v. U.S. Fish and Wildlife Serv.*, 611 F.3d 692, 702 n.12 (10th Cir. 2010) ("Even though this

action was originally filed in the form of a complaint, the parties later agreed to proceed as if it properly had been filed as a petition for review of agency action."). Moreover, the Supreme Court has stressed that the district court's "focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). As the Tenth Circuit has explained, "[t]he complete administrative record consists of all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993). Accordingly, judicial review must be based on the United States Forest Service's Administrative Records for these claims, and reviewed pursuant to the procedures set forth by the Tenth Circuit in *Olenhouse*.

WildEarth Guardians relies on *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011). Therein, the Ninth Circuit stated that "the APA applies only where there is 'no other adequate remedy in a court,' 5 U.S.C. § 704, and -- because the ESA provides a citizen suit remedy -- the APA does not apply in such actions. Therefore, . . . we may consider evidence outside the administrative record for the limited purposes of reviewing Plaintiffs' ESA claim." *Kraayenbrink*, 632 F.3d at 497. WildEarth reads this statement to mean that claims brought under the citizen-suit provision of the Endangered Species Act are not governed by the Administrative Procedure Act. (Doc. 17.)

WildEarth Guardians' reading of *Kraayenbrink* is contrary to binding Tenth Circuit authority on the applicability of the Administrative Procedure Act to the citizen-suit provision of the Endangered Species Act. *See Rio Grande Silvery Minnow*, 601 F.3d at 1106 n.3; *Coalition for Sustainable Res., Inc.*, 259 F.3d at 1249-50; *Biodiversity Legal Found.*, 146 F.3d at 1252. In that this Court is bound by Tenth Circuit authority, WildEarth Guardians' arguments are not

persuasive, notwithstanding Ninth Circuit authority to the contrary.

Defendants point out this Court has held that judicial review of the plaintiffs' challenge to agency inaction under the Endangered Species Act was governed by the Administrative Procedure Act. *Rio Grande Silvery Minnow v. McDonald*, No. CIV 99-1320 JP/RLP (D.N.M. Apr. 30, 2001) (Def. Ex. A) ("Section 706 of the Administrative Procedure Act requires that a court 'review the whole record or those parts of it cited by a party' regardless of whether the challenge is to 'compel agency action unlawfully withheld or unreasonably delayed' or to an actual agency action."). Indeed, this holding is consistent with Tenth Circuit law.

Defendants observe that in contemporaneous cases before this Court, WildEarth Guardians has acknowledged that the Administrative Procedure Act governs and has agreed to the procedures set forth in *Olenhouse*. *See WildEarth Guardians v. U.S. Forest Service*, Case No. 1:14-cv-00828-MV/KK (D.N.M. Jan. 20, 2015) (Def. Ex. B); *WildEarth Guardians v. U.S. Bureau of Reclamation*, Case No. 1:14-cv-00666-RB/SCY (D.N.M. Oct. 30, 2014) (Def. Ex. C). In its reply brief, WildEarth Guardians states that the fact that it "chose not to file a motion requiring an 'Answer' instead of an *Olenhouse* response in other cases does not mean an Answer is not legally required in this case." (Doc. 24). WildEarth Guardians points out that in one of the other cases, it agreed to the *Olenhouse* procedures but reserved its right to file any motion regarding the completeness, supplementation, or adequacy of the record filed. *See Guardians v. U.S. Forest Service*, Case No. 1:14-cv-00828 MV/KK (D.N.M. Jan. 20, 2015). The Court finds it significant that WildEarth Guardians has recognized the state of Tenth Circuit law in these other cases.

WildEarth Guardians also cites to an action it brought in the District of Colorado to force the Secretary of the Interior to comply with his duty to make a 12-month finding on WildEarth

Guardians' petition to list the Fremont rockcress, a rare flowering plant, as an endangered or threatened species under 16 U.S.C. § 1533. *See WildEarth Guardians v. Salazar*, Civ. No. 1:09-cv-02990 AP (Dist. Colo. 2009) (Doc. 24-3). In that case, the Secretary of the Interior filed an Answer. (Doc. 24-4.) On February 20, 2010, Judge John L. Kane reviewed the file and determined that the case should not be on the administrative appeals docket and directed the Clerk of the Court to assign the case to a district judge by random draw. (Doc. 24-5). The legal basis for the instant case differs from that of *WildEarth Guardians v. Salazar*. *Compare* 16 U.S.C. § 1540(g)(1)(A) *with* 16 U.S.C. § 1540(g)(1)(C). In that the Secretary of the Interior filed an Answer to the Complaint in *WildEarth Guardians v. Salazar*, and the case was brought under a different subsection of the law, it was not necessary for Judge Kane to decide the legal question presented in the instant case. For this reason, the Order issued by Judge Kane on February 20, 2010 in *WildEarth Guardians v. Salazar* does not support WildEarth Guardians' argument in this matter.

### III.    Conclusion

In this case, WildEarth Guardians alleges that the United States Forest Service has failed to comply with the Endangered Species Act in authorizing livestock grazing on the San Diego and Cebolla San Antonio Allotments. These claims are subject to the judicial review provisions of the Administrative Procedure Act.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff WildEarth Guardians' Motion for an Order Requiring Federal Defendants to File an Answer to Plaintiff's Complaint, (Doc. 17), is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**