IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


SAN DIEGO CATTLEMEN'S
COOPERATIVE ASSOCIATION, et al.,
        Plaintiffs,

v.                                                                         No. CIV 14-00818 RB/WPL

TOM VILSACK, SECRETARY, U.S.
DEPARTMENT OF AGRICULTURE, et al.,
        Defendants.

_____

WILDEARTH GUARDIANS,
        Plaintiff,

v.                                                                          No. CIV 14-00887 RB/WPL

UNITED STATES FOREST SERVICE,
et al.,
        Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants Tom Vilsack, Secretary of the U.S. Department of Agriculture, et al.'s Partial Motion for Summary Judgment (Doc. 44). The San Diego Cattlemen's Cooperative Association (Cattlemen's Cooperative), et al. filed suit against Tom Vilsack, Secretary of the U.S. Department of Agriculture, et al. alleging violations of the National Environmental Policy Act, 42 U.S.C. §§ 4321–4370h (NEPA) and the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (APA). (Doc. 1 at 1–2.) Defendants Tom Vilsack, Secretary of the U.S. Department of Agriculture, et al. seek dismissal of all claims against certain named defendants, claims involving a proposed fence in the Santa Fe National Forest, and claims

made pursuant to the APA.  (Doc. 44 at 1.)  Having reviewed the parties' submissions and arguments, the Court **GRANTS** the Motion.

I.      BACKGROUND

The Forest Service manages national forests for "outdoor recreation, range, timber, watershed, and wildlife and fish purposes."  16 U.S.C. § 528.  As part of its range operations, the Forest Service issues permits for grazing allotments within national forests and allows grazing pursuant to individualized management criteria and permit terms and conditions.  (Docs. 13 at 6–7; 13-2 ¶¶ 7–9; 13-3 ¶¶ 6–8.)  Cattlemen's Cooperative holds grazing permits and represents the interests of ranchers who hold grazing permits in the Santa Fe and Lincoln National Forests.  (Doc. 1 ¶¶ 10–11, 15–16.)  Specifically, Cattlemen's Cooperative holds grazing permits for allotments that include the Lower Rio Cebolla, in the Santa Fe National Forest, and Wills Canyon/Mauldin Springs, Agua Chiquita, and Rio Peñasco, all of which are in the Lincoln National Forest.  (*Id.* at ¶¶ 10–14.)

In 2013, U.S. Fish and Wildlife Service (FWS) issued a proposed rule, preliminarily determining that the New Mexico meadow jumping mouse is an endangered species pursuant to the Endangered Species Act, 16 U.S.C. § 1531.  *See* Listing Determination for the New Mexico Meadow Jumping Mouse, 78 Fed. Reg. 37,363.  FWS also proposed critical habitat designation, identifying partially occupied habitat in the Lower Rio Cebolla and in Wills Canyon/Mauldin Springs, Agua Chiquita, and Middle Rio Peñasco.  Proposed Designation of Critical Habitat for the New Mexico Meadow Jumping Mouse, 78 Fed. Reg. 37,328, 37,336–7 (also listing Upper Rio Peñasco as unoccupied but proposed critical habitat).

FWS finalized its determination that the New Mexico meadow jumping mouse is endangered, but has not yet finalized critical habitat designation.  Endangered Status for the

N.M. Meadow Jumping Mouse, 79 Fed. Reg. 33,119, 33,119–22 (June 10, 2014) (codified at 50 C.F.R. § 17.11). According to the listing decision, the New Mexico meadow jumping mouse "has exceptionally specialized habitat requirements," which include riparian areas with tall grasses. *Id.* at 33,120–21. FWS determined that excessive livestock grazing in critical riparian areas reduces the mouse habitat and threatens the viability of the species. *See id.* at 33,122.

Once the New Mexico meadow jumping mouse became an endangered species, the Forest Service began acting to protect the mouse habitat. In the Santa Fe National Forest, the Forest Service issued a notice, proposing a five-foot pipe fence around riparian land in the Lower Rio Cebolla to improve New Mexico meadow jumping mouse "occupied habitat." (Doc. 1 ¶¶ 56–57.) In the Lincoln National Forest, the Forest Service issued a Special Closure for Resource Protection in Wills Canyon (Doc. 1-4 at 29) and built new fences in Mauldin Springs, Agua Chiquita, and Rio Peñasco.

Cattlemen's Cooperative sued Tom Vilsack, Secretary of the U.S. Department of Agriculture, et al., and included as defendants Secretary of the U.S. Department of the Interior, Sally Jewell (erroneously named "Sandy" Jewell); FWS Southwest Regional Director Benjamin Tuggle; FWS Ecological Service Field Office Supervisor Wally Murphy; and FWS Endangered Species Biologist Eric Hein (collectively "Department of Interior Defendants"). (*Id.* at 1.) Cattlemen's Cooperative alleges that the U.S. Forest Service (Forest Service) violated NEPA and APA when issuing notice of a proposed fence in the Lower Rio Cebolla, within the Santa Fe National Forest, and for issuing the Special Closure of Wills Canyon and building fences in Mauldin Springs, Agua Chiquita, and Rio Peñasco, all within the Lincoln National Forest. (*Id.* at ¶¶ 94–101.) Tom Vilsack, Secretary of the U.S. Department of Agriculture, et al. filed a Partial Motion to Dismiss Cattlemen's Cooperative claims (1) against the Department of Interior

Defendants; (2) involving the Forest Service's proposed fence in the Santa Fe National Forest; and (3) made pursuant to the APA.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted). 28 U.S.C. § 1331 confers federal question jurisdiction for district courts to adjudicate civil actions "arising under the Constitution, laws, or treaties of the United States." For a claim to arise under federal law, the claim must be well pleaded and either establish that federal law created the cause of action or the case "turns on a substantial question of federal law." *Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994).

Even where 28 U.S.C. § 1331 confers jurisdiction, it does not waive sovereign immunity. *Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002). "[S]overeign immunity generally shields the United States, its agencies, and officers acting in their official capacity from suit." *Id.* Federal district courts lack subject matter jurisdiction if sovereign immunity has not been waived. *Id.*

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a claim for lack of subject matter jurisdiction. The party that seeks to invoke subject matter jurisdiction, usually the plaintiff, bears the burden of establishing jurisdiction by a preponderance of the evidence. *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999). In the Tenth Circuit, motions to dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which

subject matter jurisdiction is based." *Ruiz v. McDonnell,* 299 F.3d 1173, 1180 (10th Cir. 2002). In the first method, "a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). In the second method, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id.* at 1003.

Both methods to review subject matter jurisdiction under Rule 12(b)(1) differ from review under Federal Rule of Civil Procedure 12(b)(6). If resolution of a jurisdictional question "is intertwined with the merits of the case," then the Court must instead review the case under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Holt*, 46 F.3d at 1003. "When deciding whether jurisdiction is intertwined with the merits of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim.' " *Davis ex rel. Davis v. United States,* 343 F.3d 1282, 1296 (10th Cir. 2003) (distinguishing between the jurisdictional issue, whether the administration improperly denied the plaintiffs certification). Where subject matter jurisdiction depends on the same statute that provides the substantive claim in the case, the jurisdictional question intertwines with the merits of the case. *Holt*, 46 F.3d at 1003.

To review a motion under Rule 12(b)(6), courts accept as true all well-pleaded allegations and view the pleadings in a light most favorable to the nonmoving party. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144–45 (10th Cir. 2013). Although factual assertions are taken as true, legal conclusions are not. The alleged facts, moreover, must be sufficient to make the claim plausible. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim is plausible where the facts provide a "reasonable inference" to support the claim. *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009). Thus, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. DISCUSSION

#### A. Preliminary Matters

Since Rule 12(b)(1) motions implicate jurisdiction to review the claims, the Court must consider subject matter jurisdiction and sovereign immunity before considering Rule 12(b)(6) arguments. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed . . . ."). To determine whether dismissal is appropriate pursuant to 12(b)(1) or 12(b)(6), the Court must consider whether resolution of the jurisdictional question will resolve an aspect of the substantive claim.

In this case, the "substantive" claim is based on NEPA, which, counter-intuitively, requires agencies to conduct a process rather than reach a specific, substantive conclusion. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) ("Although these procedures are almost certain to affect the agency's substantive decision, it is now well settled that NEPA itself does not mandate particular results, but simply prescribes the necessary process."). NEPA requires federal agencies to consider the environmental impacts of their actions and disclose those impacts to the public. *Baltimore Gas & Elec. Co. v. Natural Res. Defense Council*, 462 U.S. 87 (1983). As such, NEPA has an "action forcing" purpose, to ensure that agencies weigh information about environmental impacts and also provide a public role in evaluating that information. *Methow Valley Citizens Council*, 490 U.S. at 349. Notably, although NEPA imposes procedural requirements onto federal agencies, it does not provide a private right of action for review. *Utah Envtl. Cong. v. Richmond*, 483 F.3d 1127, 1134 (10th Cir. 2007) (discussing NEPA's procedural mandate, noting that NEPA does not provide a private right of action, and instead relying on the APA for judicial review). Thus, NEPA also does not

waive sovereign immunity for suit. *S. Utah Wilderness Alliance & Natural Res. Def. Council v. Bureau of Land Mgmt.*, No. 2:08CV64DAK, 2008 WL 5245492, at *3 (D. Utah Dec. 16, 2008) ("[B]oth the Supreme Court and the Tenth Circuit have recognized that the APA is the only waiver of sovereign immunity for NEPA claims.") (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882 (1990); *Richmond*, 483 F.3d at 1134).

The APA can provide for judicial review where an agency violates another federal statute. Section 702 of the APA provides "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. While the APA, by itself, cannot confer jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 105–07 (1977), the APA can provide for judicial review if a plaintiff suffers a legal wrong within the meaning of another "relevant statute." 5 U.S.C. § 702; *see also Utah v. Babbitt*, 137 F.3d 1193, 1203 (10th Cir. 1998) ("Because neither FLPMA nor NEPA provide for a private right of action, Plaintiffs rely on the judicial review provisions of the APA in bringing their claims.") (internal footnote omitted). Similarly, even if a substantive statute does not waive sovereign immunity, the APA waives sovereign immunity for actions in federal court "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority . . . ." 5 U.S.C. § 702. However, where a plaintiff relies on the APA for a private right of action, the plaintiff must satisfy additional requirements pursuant to the APA. *See Utah*, 137 F.3d 1193 at 1203 (10th Cir. 1998) ("Consequently, in addition to the Article III standing requirements, Plaintiffs must also meet the statutory standing requirements of the APA.") (internal footnotes omitted).

When a plaintiff seeks review of agency action "under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.' " *Lujan*, 497 U.S. at 882 (quoting 5 U.S.C. § 704). "[T]o be 'final,' agency action must 'mark the consummation of the agency's decisionmaking process,' and must either determine 'rights or obligations' or occasion 'legal consequences.' " *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 483 (2004) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). Notably, a final agency action "mark[s] the end of the road for the agency's consideration of the issue . . . ." *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183, 1192 (10th Cir. 2014).

### B. *Department of Interior Defendants*

The Court lacks subject matter jurisdiction to review the claims against the Department of Interior Defendants because Cattlemen's Cooperative has not established sufficient facts to show that the Department of Interior Defendants took a final agency action that violates federal law. In its Complaint, Cattlemen's Cooperative asserts that Secretary Jewell is the head of her agency, "with responsibilities to ensure that agency actions are in accordance with" federal laws and regulations. (*Id.* at ¶ 17.) Defendants Tuggle and Murphy "are supervisors and decision makers for [FWS] and responsible for either making decisions that have or will irreparably impact Plaintiffs or for supervision of employees caring [sic] out agency directives or collaborating in actions in violation of" federal laws and regulations. (*Id.*) Defendant Hein has "either taken actions, proposed actions, or collaborated/consulted in actions that are arbitrary and capricious and in violation of" federal laws and regulations. (*Id.*) The Complaint does not mention any of these defendants again by name.

Cattlemen's Cooperative also alleges facts regarding FWS: that it listed the New Mexico meadow jumping mouse as endangered (*id.* at ¶¶ 48–49), has proposed but not yet designated critical habitat for the mouse (*id.* at ¶¶ 50–52, 54), and has not yet conducted NEPA analysis on

proposed critical habitat (*id.* at ¶ 53).  Cattlemen's Cooperative further asserts that the Forest Service relied on FWS's determination that the mouse is endangered to justify the Forest Service's actions.  (*Id.* at ¶¶ 85, 99–100.)

None of these allegations, even if considered factual and true, are sufficient to establish final agency action.  Although Cattlemen's Cooperative asserts that Defendant Hein may have "taken actions" in violation of U.S. law, Cattlemen's Cooperative merely alleges that he took action or "proposed actions or collaborated/consulted in action."  (Doc. 1 ¶ 17.)  Indeed, Cattlemen's Cooperative later acknowledges that FWS "did not have the authority" to take the actions in the Santa Fe and Lincoln National Forests.  (Doc. 48 at 11.)  Consequently, the only final action taken by any Department of Interior Defendants is the determination that the New Mexico meadow jumping mouse is endangered and proposing critical habitat.  Cattlemen's Cooperative did not assert that FWS violated any laws in taking either of these actions.  (*See* Doc. 1 ¶¶ 94–101 (describing only violations involving the Forest Service's proposed fence in the Santa Fe National Forest and the Special Closure in the Lincoln National Forest).)  Since Cattlemen's Cooperative must allege a final agency action that violates federal law to waive sovereign immunity pursuant to the APA, the Court lacks jurisdiction to hear claims against the Department of Interior Defendants.

Cattlemen's Cooperative attempts to overcome this deficit in their Response, proffering a "cat's paw" theory and arguing that FWS "largely directed" the Forest Service to take the actions in the Santa Fe and Lincoln National Forests.  (Doc. 43 at 11.)  To support this theory, Cattlemen's Cooperative asserts that FWS "provided biased information" to the Forest Service and "met repeatedly" with the Forest Service "to determine how to protect habitat" within the National Forests.  (Doc. 48 at 11.)  FWS further refused to meet with the attorney for

Cattlemen's Cooperative, influencing the Forest Service to similarly refuse a meeting. (*Id.* at 13.) Except for the allegation in the Complaint that FWS "collaborated/consulted" in the actions in the Santa Fe and Lincoln National Forests, Cattlemen's Cooperative failed to assert any of these facts in the Complaint.

These new allegations are belated and insufficient. First, the Court reviews Rule 12(b)(1) facial attacks based on the allegations in complaints, not supplemental arguments. *See Holt*, 46 F.3d at 1002 ("In reviewing a facial attack on the *complaint*, a district court must accept the allegations in the *complaint* as true.") (emphasis added). Moreover, Cattlemen's Cooperative provides no law to support its assertion that the "cat's paw" or "substantial influence" theory apply to the claims under the APA or the APA's jurisdictional requirement for final agency action. Instead, Cattlemen's Cooperative proffers arguments based in tort law. (Doc. 48 at 12 (citing only *Staub v. Proctor Hosp.* 562 U.S. 411 (involving the Uniformed Services Employment and Reemployment Rights Act and determining that Congress, in establishing a federal tort, intended to adopt the background of general tort law) and Tim Davis, *Beyond the Cat's Paw: An Argument for Adopting a "Substantially Influences" Standard for Title VII and ADEA Liability*, 6 Pierce L. Rev. 247 (2007) (involving employment law and recognizing "the common law rule, also applicable to statutory torts . . ., that an employer is liable for the intentional torts of its employees").) Since Cattlemen's Cooperative has not challenged any final agency action taken by the Department of Interior Defendants, Cattlemen's Cooperative has not established that the government waived its sovereign immunity, and thus the Court lacks jurisdiction to review any claims against the Department of Interior Defendants.

### C. *Claims Regarding the Proposal to Erect a Fence in the Santa Fe National Forest*

Similarly, the claims regarding the proposed fence in the Santa Fe National Forest lack subject matter jurisdiction because the "proposed" fence is not a final agency action. According

10

to the Complaint, the Forest Service made several claims when it provided notice of the "proposed project" to improve the New Mexico meadow jumping mouse habitat. (Doc. 1 ¶¶ 56–62, 64.) The Forest Service stated that since the New Mexico meadow jumping mouse is an endangered species, the Forest Service "must ensure that any action [it] fund[s], authorize[s] or carr[ies] out is not likely to jeopardize the continued existence" of the mouse and that the FWS listing determination "found that livestock grazing has the potential to jeopardize the species." (*Id.* at ¶ 58.) The Forest Service then "claim[ed] that '[c]ontinuing to allow grazing . . . in the mouse's occupied habitat would not meet the intent of the Endangered Species Act.' " (*Id.* at ¶ 61.) According to the Complaint, the Forest Service further "claim[ed] that the proposed project is categorically excluded" from NEPA analysis and " '[p]reliminary analysis indicates that there are no extraordinary circumstances that would result in significant effects.' " (*Id.* at ¶¶ 62, 64.) Cattlemen's Cooperative argues that these claims show that the Forest Service had already made determinations that affected legal rights, at least practically if not nominally. (Doc. 48 at 4.) *See Bennett*, 520 U.S. at 178 (1997) (noting that final actions must both determine legal rights and "mark the consummation of the agency's decisionmaking process").

Yet, even these alleged facts indicate that the Forest Service had not taken a final action. Although courts "construe the concept of final agency action pragmatically, rather than inflexibly[,]" final agency action still requires a "decision [that is] effectively the last word of the agency." *Kobach*, 772 F.3d at 1189, 1192 (10th Cir. 2014) (determining in that case that the decision was final because the decision-maker had been empowered by the commission, the decision-maker purported to act on the commission's behalf, and the commission later lacked a quorum to review the decision further). Here, asserting a "claim" after conducting a "preliminary analysis" (*id.* at ¶¶ 61, 62, 64) falls short of the "consummation of the agency's

11

decisionmaking process." *See Bennett*, 520 U.S. at 178 (internal quotations omitted). To implement a categorical exclusion, an agency must not only determine that an action fits within an enumerated category, but also that no "extraordinary circumstance" impacts a "normally excluded action." 40 C.F.R. § 1508.4. A "preliminary analysis" that "indicates" no extraordinary circumstances exist cannot suffice as a final determination. Cattlemen's Cooperative has asserted no facts that indicate that FWS had, in actuality, already made a final decision. *See Wyoming*, 661 F.3d at 1264 ("[P]redetermination occurs only when an agency *irreversibly and irretrievably* commits itself to a plan of action that is dependent upon the NEPA environmental analysis producing a certain outcome, before the agency has completed that environmental analysis . . . ."). As such, Cattlemen's Cooperative fails to sufficiently support its allegation that the action was final, and the Court therefore lacks subject matter jurisdiction over claims involving the proposed fence.

### D. Claims Pursuant to the APA

Lastly, the Court lacks jurisdiction to review, or alternatively dismisses for failure to state a claim upon which relief may be granted, the remaining claims in "Count Two." In the Complaint, "Count Two" is entitled "**Count Two: Violation of the APA, 5 U.S.C. §§[sic]706(2)**." (Doc. 1 at 24.) Cattlemen's Cooperative alleges "By closing [Wills Canyon] and erecting fences in the Mauldin Springs, Agua Chiquita and Rio Peñasco riparian areas . . . the Forest Service has abused its discretion, has acted arbitrarily and capriciously and not in accordance with the law, in violation of the [APA]." (Doc. 1 ¶¶ 99–100.) As Cattlemen's Cooperative recognizes (Doc. 48 at 10), the APA does not provide a separate cause of action. *See Califano*, 430 U.S. at 107. Thus to prevail, Cattlemen's Cooperative must have asserted in their Complaint some other federal claim of right for each of their allegations. *See City of Albuquerque*, 379 F.3d at 906.

Cattlemen's Cooperative argues that, despite the clear heading and language to the contrary, "Count Two" actually alleges additional NEPA violations. (*See* Doc. 48 at 10–11.) To distinguish the NEPA claims in "Count Two" from those alleged in "Count One," Cattlemen's Cooperative asserts that "Count One" challenges procedural NEPA violations, while "Count Two" challenges substantive NEPA violations. (*Id.*) "Count One" states that the Forest Service issued the Special Closure "without first conducting an environmental review and producing either an [Environmental Assessment] or an [Environmental Impact Statement] according to the requirements" of NEPA. (Doc. 1 at ¶ 96.) In "Count Two," Cattlemen's Cooperative asserts that the Forest Service violated the APA by (1) not conducting a NEPA analysis; (2) "relying on inapplicable regulatory and statutory provisions[;]" and (3) "relying on the claim that the Endangered Species Act requires the Forest Service to make a change to a legally implemented and approved grazing program to protect the 'occupied habitat' of the New Mexico meadow jumping mouse." (*Id.* at ¶¶ 99–100.) Cattlemen's Cooperative argues that whereas the claims in "Count One" are procedural, because the Forest Service did not conduct specific reviews, the claims in "Count Two" are substantive, because the Forest Service did not "consider alternatives." (Doc. 48 at 10–11.)

The argument exposes a distinction without a difference. In limited circumstances, the Tenth Circuit recognizes substantive NEPA violations where an agency, in making its final decision, disregards evidence produced by a NEPA analysis. *See Davis*, 302 F.3d at 1112 (recognizing a substantive NEPA challenge if "plaintiffs [could] demonstrate substantively that the [agency's] conclusion of non-significant effect on the environment represent[ed] a "clear error of judgment"). Here, however, the plaintiff did not plead that the Forest Service disregarded its own information to determine that the Special Closure and new fences would not

13

significantly affect the environment. Instead, it pleaded only that the Forest Service did not consider alternatives, did not conduct NEPA analysis and incorrectly interpreted legal requirements. (Doc. 1 ¶¶ 100.) All of these arguments relate to the NEPA process—namely, when NEPA analysis is required—not whether the agency erroneously failed to consider results of a NEPA analysis in making its final decision.

Because these claims alleged NEPA violations, the Court must convert the analysis to a Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted. *See Holt*, 46 F.3d at 1003 (10th Cir. 1995) ("[A] court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion . . . if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case."). To the extent that Cattlemen's Cooperative attempts to assert substantive NEPA violations in "Count Two," Cattlemen's Cooperative fails to state sufficient facts to show that the Forest Service plausibly committed a "clear error of judgment" in ignoring information from previous NEPA analysis when it issued the Special Closure for Wills Canyon and built fences in Mauldin Springs, Agua Chiquita, and Rio Peñasco. *See Davis*, 302 F.3d at 1112.

Cattlemen's Cooperative further requests that the Court read into "Count Two" a cause of action pursuant to the statutes that govern grazing in national forests. (Doc. 48 at 11.) In the Complaint, Cattlemen's Cooperative alleges that the Forest Service abused its discretion by "relying on the claim that the Endangered Species Act requires the Forest Service to make a change to a legally implemented and approved grazing program to protect the 'occupied habitat' of the New Mexico meadow jumping mouse without providing any legal or regulatory support . . . ." (Doc. 1 ¶ 100.) Cattlemen's Cooperative then argues in its Response that the reference to a "legally implemented and approved grazing program" necessarily asserts a claim pursuant to

"the Granger-Thye Act of 1950, 64 Stat. 88, 16 U.S.C. § 580*l* and subsequent authorizing statutes" including "Multiple Use Sustained Yield Act of 1969, Pub. L. 86-517, 16 U.S.C. [sic] 528 *et seq.*, [sic] Public Rangelands Improvement Act of 1978, 43 CFR [sic]" (Doc. 48 at 11). Cattlemen's Cooperative references none of these statutes in the Complaint. (*See* Doc. 1 ¶ 1 (citing only violations of NEPA and APA); *id.* at ¶¶ 99–100 (citing only violations of NEPA and APA).)

Cattlemen's Cooperative has neither moved to amend its Complaint nor explained how the Forest Service might have violated these listed statutes. The Court cannot consider the merits of a claim without a more detailed statement on the claim. *See Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir. 1999) ("[W]e do not require district courts to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists.") (internal quotations omitted); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1151 (10th Cir. 2013) (upholding the district court's denial of leave to amend where the plaintiff "failed to give adequate notice to the district court and to the opposing party of the basis of the proposed amendment") (internal quotations omitted). Indeed, the Local Rules require that "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M.LR-Civ. 15.1; *see also Calderon*, 181 F.3d at 1186 n.1 (highlighting a similar local rule in the District of Kansas to support its holding that the Court need not have granted a request to amend). While Cattlemen's Cooperative may not have had sufficient time to address the issue before the Federal Defendants filed the Partial Motion to Dismiss (*see* Doc. 48 at 9–10 (noting less than a day's notice of the Federal Defendant's motion to dismiss the claims in "Count Two"), Cattlemen's Cooperative could have filed a motion to amend after the Partial Motion to Dismiss was filed. *See Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 370 (10th Cir.

1989) (determining that the plaintiff could have amended the complaint even after the defendant filed a motion to dismiss). Given the passage of time, the Court will not consider a future motion to amend the Complaint.

## IV.    CONCLUSION

This Court lacks subject matter jurisdiction to review the claims alleged against the Federal Defendants, claims regarding the proposed fence, and claims alleged pursuant to the APA. To the extent that "Count Two" included claims based on substantive violations of NEPA, Cattlemen's Cooperative failed to state a claim upon which relief may be granted.

**THEREFORE**,

**IT IS ORDERED** that the Federal Defendants' Partial Motion to Dismiss in Civ. No. 14-818 (Doc. 44) is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**