IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SAN DIEGO CATTLEMEN'S
COOPERATIVE ASSOCIATION, et al.,
        Plaintiffs,

v.                                                                                  No. CIV 14-00818 RB/WPL

TOM VILSACK, SECRETARY, U.S.
DEPARTMENT OF AGRICULTURE, et al.,
        Defendants.

_____

WILDEARTH GUARDIANS,
        Plaintiff,

v.                                                                                  No. CIV 14-00887 RB/WPL

UNITED STATES FOREST SERVICE,
et al.,
        Defendants.

## MEMORANDUM OPINION AND ORDER

The San Diego Cattlemen's Cooperative Association, et al. (Cattlemen's Cooperative) and WildEarth Guardians (WildEarth) seek to intervene in consolidated cases 14-cv-00887 and 14-cv-00818 respectively. (Docs 36; 39.) Plaintiff WildEarth does not oppose Cattlemen's Cooperative's Motion to Intervene, but WildEarth requests the Court limit intervention to "briefing issues related to" the Court's remedy. (Doc. 40 at 2.) WildEarth concedes "any conditions or limitations placed on [Cattlemen's Cooperative's] intervention in 14-cv-00887 should also apply to WildEarth's intervention in 14-cv-00818." (Doc. 39 at 2.) Plaintiff Cattlemen's Cooperative does not oppose WildEarth's Motion to Intervene, but objects to

proposed limitations on intervention. (*Id.* at 2.) Tom Vilsack, U.S. Secretary of the Department of Agriculture, et al. (14-cv-00818 Defendants) and U.S. Forest Service, et al. (14-cv-00887 Defendants) (collectively "Federal Defendants") took no position on either Motion to Intervene. (Docs. 36 at 2; 39 at 2.) Having reviewed the parties' submissions and arguments, the Court **GRANTS** Cattlemen's Cooperative's Motion to Intervene (Doc. 36) and WildEarth's Motion to Intervene (Doc. 39).

I.     BACKGROUND

This case involves the endangered New Mexico meadow jumping mouse, which occupies habitat in the Santa Fe and Lincoln National Forests. *See* Endangered Status for the N.M. Meadow Jumping Mouse, 79 Fed. Reg. 33,119 (June 10, 2014) (codified at 50 C.F.R. § 17.11) (listing the New Mexico meadow jumping mouse); (Doc. 12-2 at 1 (addressing occupied habitat in the Santa Fe and Lincoln National Forests)). In response to the listing decision, the U.S. Forest Service (Forest Service) initiated actions to protect the habitat of the New Mexico meadow jumping mouse. The Forest Service proposed a fence in the Lower Rio Cebolla, within the Santa Fe National Forest, and issued a Special Closure for Wills Canyon and built fences in Agua Chiquita and Rio Peñasco, all within the Lincoln National Forest. (14-cv-00818 Doc. 1 ¶¶ 56, 83.)

Once the mouse was listed, two very different sets of plaintiffs initiated challenges against the Federal Defendants. (*See id*; 14-cv-00887 Doc. 1.) Cattlemen's Cooperative has grazing permits and represents the interests of ranchers with grazing permits in both National Forests. (14-cv-00818 Doc. 1 ¶¶ 10–16.) Cattlemen's Cooperative alleged that 14-cv-00818 Defendants "made no scientific inquiry or assessment of habitat or range conditions" prior to proposing the fence in the Santa Fe National Forest and issuing the Special Closure and building

fences in the Lincoln National Forest. (*Id.* at ¶ 5.) Cattlemen's Cooperative alleged that, by failing to analyze the projects, the 14-cv-00818 Defendants violated the National Environmental Policy Act, 42 U.S.C. § 4332(C). (*Id.* at 2–3.)

WildEarth is a conservation organization whose "primary goals include protection and restoration of endangered species and riparian and other sensitive ecosystems . . . ." (14-cv-0087 Doc. 1 ¶ 12.) WildEarth sent a Notice of Intent to Sue to 14-cv-00887 Defendants based on the Forest Service's failure to consult with the U.S. Fish and Wildlife Service (FWS) on permitted livestock grazing in both the Santa Fe and Lincoln National Forests. (14-cv-00887 Doc. 12-2 at 2.) WildEarth's subsequent Complaint, however, only alleged violations pertaining to the Santa Fe National Forest. (14-cv-00887 Doc. 1 at ¶¶ 1, 56–61, 63.) In the Complaint, WildEarth asserted that "[g]razing of livestock is a primary driver of [New Mexico meadow jumping mouse] decline" (*id.* at ¶ 3) and "[d]uring surveys in 2005 and 2006, every population of New Mexico meadow jumping mouse was found in areas inaccessible to livestock" (*id.* at ¶ 40). WildEarth pled a "substantial interest" in the Forest Service's actions because the failure to consult "adversely affects the New Mexico meadow jumping mouse and its habitat, impairing its survival and recovery . . . ." (*Id.* at ¶ 14.)

The Federal Defendants moved to consolidate these cases, asserting that the Federal Defendants have "taken the middle ground between . . . irreconcilable requests for relief." (Doc. 21 at 3.) The Court granted the Motion to Consolidate, finding Cattlemen's Cooperative and WildEarth "seek conflicting rulings on the same subject matter and request incompatible injunctions." (Doc. 32 at 6.) After these cases were consolidated, the Federal Defendants filed a Partial Motion to Dismiss in 14-cv-00818, which included a request to dismiss all of Cattlemen's Cooperative's claims in the Santa Fe National Forest. (Doc. 44.) The Court granted the Partial

Motion to Dismiss. (Doc. 52.) Meanwhile, Cattlemen's Cooperative and WildEarth (jointly, "Proposed Intervenors") sought leave to intervene as defendants in each other's actions. (Docs. 36 at 1, 39 at 1.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) allows intervention as of right under certain circumstances. To intervene, an applicant must show "(1) the application is timely, (2) the applicant claims an interest relating to the property or transaction which is the subject of the action, (3) the applicant's interest may be impaired or impeded, and (4) the applicant's interest is not adequately represented by existing parties." *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1103 (10th Cir. 2005). The Tenth Circuit generally interprets these requirements liberally to allow intervention. *Id.*

## III.  DISCUSSION

### A.  Intervention as of Right

*(1) Timeliness*

"The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (internal quotation omitted). "The analysis is contextual," and includes consideration of the status of the case. *See id.* Although the scheduling order has been issued for these consolidated cases (Doc. 42), both parties filed to intervene before the scheduling conference took place (Docs. 37; 39). Since both applicants are parties to companion cases, they were both involved in the scheduling process. (*See* Doc. 42.) The schedule for briefing on the merits, moreover, has not yet been established.

(*See id.* at 2.)  Further, no existing party asserts prejudice.  (*See* Docs. 36 at 2; 39 at 2.)  In light of these circumstances, both Motions to Intervene are timely.

      *(2) The Intervenors' Interests*

Pursuant to Rule 24(a)(2), applicants must assert "an interest relating to the property or transaction which is the subject of the action."  The Tenth Circuit considers whether the interest is "direct, substantial, and legally protectable."  *Utah Ass'n of Counties*, 255 F.3d at 1251 (recognizing an intervenor's economic and environmental interest in a designated national monument).  Here, Cattlemen's Cooperative has an economic interest based on livestock grazing permits within the Santa Fe National Forest.  (14-cv-00818 Doc. 1 ¶¶ 10–11, 15–16.)

WildEarth's interest in 14-cv-00818 is less clear in light of the recent dismissal of Cattlemen's Cooperative's claims in the Santa Fe National Forest (Doc. 52).  WildEarth initially provided a Notice of Intent to Sue for failing to consult with FWS on grazing in both the Santa Fe and Lincoln National Forests (14-cv-00887 Doc. 12-2 at 2), but WildEarth later alleged only violations in the Santa Fe National Forest (14-cv-00887 Doc. 1 at ¶¶ 1, 56–61, 63).  Moreover, WildEarth asserts only that its members and activists enjoy observing the New Mexico meadow jumping mouse in the Santa Fe National Forest.  (*Id.* at ¶ 13.)  *But see San Juan Cnty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) ("[P]arties seeking to intervene under Rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case.") (internal quotation omitted).  Since the Court has dismissed all claims in 14-cv-00818 relating to the Santa Fe National Forest (Doc. 52 at 12), the only remaining claim in 14-cv-00818 relates to the Special Closure of Wills Canyon and fences in Agua Chiquita and Rio Peñasco, all of which are in the Lincoln National Forest.  (*See* 14-cv-00818 Doc. 1 ¶¶ 96–97.)

Even so, WildEarth has an environmental interest in protecting the New Mexico meadow jumping mouse as a species. *See Coal. of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996) (determining the intervenor's record of advocacy for protection of a species amounted to a direct and substantial interest in the species' listing). WildEarth demonstrated its interest in the survival of the New Mexico meadow jumping mouse as a species in its Notice of Intent to Sue (14-cv-00887 Doc. 12-2 at 2), its Complaint (14-cv-00887 Doc. 1) and its Motion to Intervene (Doc. 39 at 1–2). Indeed, WildEarth seeks to intervene specifically "in order to address any arguments adverse to its interest in conserving the New Mexico meadow jumping mouse and its habitat . . . ." (*Id.*) The 14-cv-00818 Defendants' actions in the Lincoln National Forest also involve occupied habitat. (14-cv-00887 Doc. 1 ¶¶88–90.) Thus, WildEarth also has an interest in 14-cv-00818 because the case involves pertains to the protection of the New Mexico meadow jumping mouse.

*(3) Impairment of Interest*

The impairment analysis is linked to the analysis to establish an interest. *Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1116 (10th Cir. 2002). To satisfy impairment, applicants need only show that impairment of their interest "is possible if intervention is denied." *Utah Ass'n of Counties*, 255 F.3d at 1253.

Here, the Court originally determined that Cattlemen's Cooperative and WildEarth sought "conflicting rulings on the same subject matter . . . ." (Doc. 32 at 6.) WildEarth's Complaint alleges that the Forest Service is violating the Section 7(a)(2) consultation requirement in the Endangered Species Act by allowing grazing in occupied habitat within the Santa Fe National Forest (14-cv-00887 Doc. 1 at ¶ 73), and WildEarth seeks to enjoin the Forest Service from authorizing grazing in occupied habitat within the Santa Fe National Forest until the Forest Service completes consultation (*id.* at 20). Consequently, if WildEarth prevails in 14-

cv-00887, the decision will impair Cattlemen's Cooperative's interest in grazing cattle in the Santa Fe National Forest.

Similarly, WildEarth's interest in the New Mexico meadow jumping mouse will be impaired if the Cattlemen's Cooperative prevails in 14-cv-00818.  Whereas Cattlemen's Cooperative asserts that the Forest Service must conduct "scientific inquiry or assessment of habitat or range conditions" before taking actions to protect the New Mexico meadow jumping mouse (14-cv-00818 Doc. 1 ¶ 5), WildEarth initiated suit in the Santa Fe National Forest because the Forest Service continued permitted grazing in occupied habitat without first consulting with the FWS (14-cv-00887 Doc. 1 at 1).  If the Cattlemen's Cooperative can halt the closure of Wills Canyon in the Lincoln National Forest and resume grazing until the Forest Service conducts scientific assessment, WildEarth could suffer the same harm currently alleged in the Santa Fe National Forest.  If Cattlemen's Cooperative prevails in 14-cv-00818, cattle will continue to graze in occupied habitat and WildEarth's interest in the New Mexico meadow jumping mouse species could be impaired.

*(4) Adequacy of Representation*

To establish inadequate representation, applicants need only show a "possibility" that their interests and the interests of the parties may diverge.  *Utah Ass'n of Counties*, 255 F.3d at 1254.  "[T]his showing is easily made when the party upon which the intervenor must rely is the government, whose obligation is to represent not only the interest of the intervenor but the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest."  *Id*.  The conflict is especially stark here, where the Federal Defendants face completing claims and have "taken the middle ground between [the Proposed Intervenors'] irreconcilable requests for relief."  (Doc. 21 at 3.)

Moreover, the Proposed Intervenors cannot sufficiently protect their interests in each other's cases through their status as plaintiffs in the companion cases.  "[C]onsolidation is but a procedural tool and does not merge two cases such that parties to one case become parties to the other."  *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496–97 (1933); s*ee also New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 721 (10th Cir. 2009) (vacating an order where the district court denied intervention because the applicant was already an intervenor in a consolidated case).

### B.  *Suitability of Restrictions on Intervention*

While the Rule 24 advisory committee notes to the 1966 amendment indicate that intervention of right "may be subject to appropriate conditions," examples of such limitations are rare.  *See Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 352 (5th Cir. 1997) (upholding imposed conditions, limiting review to the "narrow issue" of whether a court could condition intervention in an admiralty case upon shared maintenance of the property at issue); *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 (1987) ("[A] district court has less discretion to limit the participation of an intervenor of right than that of a permissive intervenor.").  The dismissal of Cattlemen's Cooperative's claims in the Santa Fe National Forest renders intervention less duplicative than originally foreseen.  As such, this Court declines to impose conditions on intervention in this case.

### IV.    CONCLUSION

In many ways, Cattlemen's Cooperative and WildEarth represent two sides of the same coin, seeking conflicting land management from the same Federal Defendants.  (*See* Doc. 32 at 6.)  Cattlemen's Cooperative pleads interest in grazing in both the Santa Fe and Lincoln National Forests (14-cv-00818 Doc. 1 ¶¶ 10–11, 15–16) and WildEarth pleads an interest in protecting and restoring the New Mexico meadow jumping mouse as a species (14-cv-00887 Doc. 1 ¶¶ 12,

14).  Whereas Cattlemen's Cooperative seeks scientific analysis before the Federal Defendants act to protect the New Mexico meadow jumping mouse (14-cv-00818 Doc. 1 ¶ 5), WildEarth seeks consultation before the Federal Defendants allow grazing to continue (14-cv-00887 Doc. 1 ¶ 1).  The Proposed Intervenors' interests risk impairment if the other party prevails in its case.  Moreover, Federal Defendants would inadequately represent either party due to their competing positions in the companion cases.  As such, Proposed Intervenors are entitled to intervention as of right.

    **THEREFORE**,

    **IT IS ORDERED** that the Motion to Intervene by Plaintiffs San Diego Cattlemen's Cooperative Association, et al., (Doc. 36) and WildEarth Guardians' Motion to Intervene (Doc. 39) are **GRANTED.**

                                       _____
                                       **ROBERT C. BRACK
                                       UNITED STATES DISTRICT JUDGE**